IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ANTHONY T. GROSE, SR.

                **Plaintiff,**

v.                                           Case 2:16-cv-02043-SHL-cgc

**JACOB J. LEW, JR.**, Secretary,
Department of the Treasury,

                **Defendant.**

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendant Jacob J. Lew's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Docket Entry "D.E." #59). The instant motion has been referred for Report and Recommendation.[1] For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.[2]

---

[1] **Error! Main Document Only.**The instant case has been referred to the United States Magistrate Judge by Administrative Order 13-05 pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

[2] Plaintiff additionally filed a "Leave-of-Court Motion" to File a Sur-Reply (D.E. #71) to Defendant's Response to his Second Motion to Strike (D.E. #68) and to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (D.E. #45). The Court reviewed Plaintiff's filing, which lists the filings Plaintiff has already made with the Court and reiterates Plaintiff's arguments therein, and finds no grounds for the sur-reply to be granted. Accordingly, Plaintiff's Leave of Court Motion is DENIED.

1

**I.     Introduction**

On January 19, 2016, Plaintiff filed his *pro se* Complaint in this Court. (D.E. #1). On May 31, 2016, after obtaining leave of court, Plaintiff filed his *pro se* Amended Complaint. (D.E. #24). Plaintiff's Amended Complaint alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. ("ADEA"), Sections 501 and 504 the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq*. & § 791 *et seq*. ("Rehabilitation Act"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq*. ("ADA"). Plaintiff alleges that Defendant, his former employer, discriminated against him on the basis of disability (vision) (Counts II & V), age (Count III), gender, race, and color (Count IV). (*Id*. ¶¶ 13, 32).

He further alleges that Defendant retaliated against him in violation of Title VII, 42 U.S.C. § 2000e-16(a), for taking part in prior Equal Employment Opportunity ("EEO") activity (Count I) on the following instances: (1) on August 16, 2006, he was placed on an employment improvement plan ("EIP"); (2) on June 22, 2007, he received a lower annual performance appraisal for the period ending May 31, 2007; (3) on July 31, 2007, management denied his request for reconsideration of an accommodation request; (4) on October 3, 2007, management denied his subsequent request for reconsideration of an accommodation; and, (5) on August 3, 2007, he was subjected to a "humiliating and degrading" training plan. (Am. Compl. ¶¶ 5, 25-27).

**II.     Proposed Findings of Fact**

Plaintiff worked as a seasonal Customer Service Representative during the tax season at the Internal Revenue Service ("IRS") from 1999 until 2007. (Plaintiff's Deposition ("Pl.'s Dep."

at 18:14-23, 31:15-24; Mary Banks Deposition ("Banks Dep.") at 7:17-18). The branch manager was Teresa Webb-Patton, and Plaintiff's team manager was Mary Banks. (Pl's. Dep. at 31:2-7; Def.'s Exh. 6: Performance Appraisal 2004-2005 at PageID 275). From 2006 until 2007, Banks remembers "at least" two African American males on the team. (Banks Dep. at 8:1-8).

In Plaintiff's July 1, 2004 to June 30, 2005 performance appraisal, Plaintiff met or exceeded all of the criteria, was given an average Critical Job Elements ("CJE") score of 3.2, and he overall was rated "Fully Successful." (Def.'s Exh. 6: Performance Appraisal 2004-2005 at PageID 275). In his July 1, 2005 to December 31, 2005 progress review, Banks advised Plaintiff that he was failing in customer accuracy, accuracy of input, and timeliness/meeting deadlines. (Def.'s Exh. 8: Progress Review 7/1/2005 ─ 12/31/2005). In his July 1, 2005 to May 31, 2006 performance appraisal, Plaintiff met all the criteria except that he failed compliance communication, he was given an average CJE score of 2.8, and he overall was rated "Minimally Successful." (Def.'s Exh. 9: Performance Appraisal 2005-2006).

At some point in 2005 "before the evaluations," Plaintiff advised Banks that he had been having vision trouble affecting his performance. (Pl.'s Dep. at 203:1-205:24). Plaintiff does not recall Banks responding to him about his vision trouble or offering to assist him but did tell him to "go to the clinic" when he told her he had certain problems with his eyes or headaches. (*Id*. at 203:20-204:9). Plaintiff would also initiate his own visits to the clinic. (204:10-205:24).

On August 3, 2006, Banks provided Plaintiff with his EIP. (Def.'s Exh. 10: EIP). In the EIP memorandum, Banks stated that Plaintiff's 2005-2006 progress review was "not indicative of [his] performance" in the failing areas and that he was "informed during the mid-year of the decrease" and "some improvements were made." (*Id*.) Banks suggested further reliance on

3

checklists and tools and insured that she and the "lead" would work with him to improve his performance in the failing areas. (*Id*.) In Plaintiff's performance appraisal from June 1, 2006 to May 31, 2007, Banks gave Plaintiff a failing rating on customer accuracy, compliance communication, and accuracy of input, an average CJE score of 2.4, and an overall rating of "Minimally Successful." (Def.'s Exh. 11: 2006-2007 Performance Appraisal at PageID 290).

On June 25, 2007, Plaintiff obtained a note from Dr. Leroy Norton, Jr., O.D., who saw him in his office for an eye examination related to eye strain. (Def.'s Exh. 12: Letter from Dr. Norton). Dr. Norton recommended that Plaintiff's employer approve a request for two flat screen monitors and one document magnification system to relieve eye strain, that Plaintiff wear bifocal lenses full time, and that he return to the clinic in one year. (*Id*.) On July 5, 2007, Plaintiff submitted a Reasonable Accommodation Request stating that he had a disability of "low vision." (Def.'s Exh. 13: Reasonable Accommodation Request at PageID 297). He described his disability as "difficulty experience[d] in reading computer screens and paper work. Prescribed bifocal lenses being worn[ ]. Eye strain while using computer and reading documents." (*Id*.) Plaintiff requested two large flat screen monitors, one document magnification system, and any other systems that would enhance "low vision readability." (*Id*.) Plaintiff attached Dr. Norton's letter to the Reasonable Accommodation Request. (*Id*. at PageID 300).

On July 11, 2007, Plaintiff requested Banks provide him two days of on-the-job training with Lead Sherri Thompson, with eight hours of review and observation while the lead is on the telephone and eight hours of observation while Plaintiff is on the telephone, to enhance specific research tools. (Def.'s Exh. 14: Routing Slip dated July 11, 2007; Def.'s Exh. 15: Banks

4

Memorandum). Banks granted Plaintiff's request in a memorandum dated July 12, 2007. (Def.'s Exh. 15: Banks Memo). On July 26, 2007, Plaintiff informed Banks that he had completed two hours with the lead on the telephone and him observing and two hours with him on the telephone with the lead observing. (Def.'s Exh. 16: Routing Slip dated July 26, 2017). Plaintiff advised that he found the training to be "very much informative and very useful" and requested further training not strictly on the telephone but also "paper observation and training." (*Id.*)

On July 31, 2007, Jacquelyne Yarbrough, Department Manager, Memphis Accounts Management, notified Plaintiff in a memorandum that his accommodation requests of a "large flat-screen monitor, a document magnification system and any other system that would enhance low vision readability" was denied because Plaintiff was found to have no substantial limitations of a major life activity. (Def.'s Exh. 17: Yarbrough Denial Memo). Yarbrough further stated that the medical assessment dated July 24, 2007 and prepared by Federal Occupational Health ("FOH") stated that "the employee's physician recommended that [Plaintiff] return to the optometrist and request spectacles that will allow focus in the intermediate [field]." (*Id.* at PageID 306, 308) The FOH physician further stated that Plaintiff "may wish to inquire from computer specialists about software that will enlarge specific text." (*Id.* at PageID 308). The FOH physician stated that he spoke with Dr. Norton states that Dr. Norton only made his specific requests "based on [Plaintiff's] request that such equipment was available." (*Id.*; Def.'s Exh. 18: Administrative Hearing Transcript, Testimony of Dr. James Allen, July 29, 2010, at 120:3-12, 132:14-134:1).

5

On August 3, 2007, Yarbrough sent a memorandum to Plaintiff on the subject of "Training" confirming an agreement reached in a meeting held on August 1, 2007. (Def.'s Exh. 19: Training Letter dated 8/3/2007). Yarbrough advised Plaintiff of three days of training to assist him in improving his job knowledge technical skill to in turn improve his overall performance to an acceptable level. (*Id*.) The dates of the training were set on August 3, August 7, and August 8, 2007. (*Id*.) Plaintiff was advised that his manager would "conduct evaluative reviews" of his work for thirty days to monitor/assess his "performance for improvement." (*Id*.) He was advised that, if at that time he was performing at an acceptable level in all aspects of his job, he "may be allowed to work overtime." (*Id*.) He was further advised that, if he was not performing at an acceptable level, he would "be issued a formal letter advising" him of such. (*Id*.) He was instructed to "work cooperatively" with his manager to ensure his success. (*Id*.)

Yarbrough testified the extent of her understanding of what Plaintiff wanted from training and stated that she asked Plaintiff for specifics but was not provided any that she was not sure about precisely what he needed. (Def.'s Exh. 20: Yarbrough Deposition at 39:8-14, 40:8-10). Thus, Yarbrough suggested that they perform an assessment because Plaintiff did not provide any further information. (*Id*. at 41: 4-5). The training was held on August 3, 6, 7, and 9, 2007. (Def.'s Exh. 21: Additional Coaching Memorandum dated October 10, 2007; Def.'s Exh. 7: Banks Aff. At #14).

On August 10, 2007, Plaintiff requested reconsideration of the denial of his accommodation request. (Def.'s Exh. 22: Routing Slip dated 8/10/2007). At that time, he did not provide any additional documentation and only requested that Part II "Deciding Official Documentation" be completed. (*Id*.) Plaintiff then took eight weeks of Family Medical Leave

6

Act ("FMLA") leave. (Def.'s Exh. 4: Pl.'s Dep. at 85:23-86:24). By letter dated October 3, 2007, Carolyn Jackson denied Plaintiff's request for reconsideration because he failed to submit "any additional medical documentation to be considered." (Def.'s Exh. 23: Denial for Reconsideration of Reasonable Accommodation Request).

On or about October 9, 2007, Plaintiff submitted a second request for reconsideration. (Exh. 24: Second Reasonable Accommodation Request). Plaintiff attached medical documentation of Dr. Ira N. B. Davis, Jr. diagnosing him with "computer vision syndrome (CVS)" with the impacts manifest in "discomfort both visually and physically" and "inaccuracies resulting in errors in performance of his job." (*Id*. at PageID 352). Dr. Davis stated that this is a "chronic condition as long as his job consists of large amounts of computer use." (*Id*.) Dr. Davis also requested "large flat screen monitors," a "document magnification system," and any other systems that would enhance low vision readability. (*Id*. at PageID 350).

On October 12, 2007, Plaintiff resigned from his employment. (Def.'s Exh. 26: Plaintiff's Letter dated November 5, 2007 at PageID 359). On October 17, 2007, Dr. Allen reviewed Plaintiff's second accommodation request, including Dr. Davis's medical documentation, and found that Plaintiff "has normal 20/20 visual acuity" when wearing bifocal spectacles and that "the flat screen monitor and document magnification are not necessary." (Def.'s Exh. 25: Second Denial of Reasonable Accommodation, at PageID 357). Dr. Allen stated that computer glasses with focal distances of 25 to 30 inches, depending on the distance of the monitor to Plaintiff's seat, may be of help, as may an ergonomic survey of Plaintiff's office to ensure his computer equipment is all within distances that are ergonomically correct. (*Id*.) Dr. Allen also again concluded that Plaintiff did not have any substantial limitations of a major life activity.

(*Id*.) Plaintiff was sent Dr. Allen's conclusions by letter dated November 14, 2007. (*Id*. at PageID 356).

### III. Proposed Conclusions of Law

#### a. *Motion to Dismiss*

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). In addressing a motion to dismiss under Rule 12(b)(6), the court must construe the complaint in the light most favorable to plaintiff and accept all well-pled factual allegations as true. *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . .claim is and the grounds upon which it rests.'" *Id.* (citing *Twombly*, 550 U.S. at 555).

Nonetheless, a complaint must contain sufficient facts "state a claim to relief that is plausible on its face'" to survive a motion to dismiss. *Twombly*, 550 U.S. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 US. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery." *Id.* at 678-79.

Defendant asserts that all of Plaintiff's claims except for those in Counts II and V alleging disability on the basis of his vision are barred under the doctrine of res judicata because they were or could have been raised in Plaintiff's previous case, *Anthony T. Grose, Sr. v. Jacob J. Lew*, No. 2:11-cv-02562-JDT-cgc. "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 n.5 (1979). It "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 378 (1940)). Four elements must be present for res judicata to apply: (1) the underlying judgment must have been rendered by a court of competent jurisdiction; (2) the same parties were involved in both suits; (3) the same cause of action was involved in both suits; and, (4) the underlying judgment was on the merits. *Hutcherson v. Lauderdale County, Tennessee*, 326 F.3d 747, 758 (6th Cir. 2003) (quoting *Collins v. Greene Cty. Bank*, 916 S.W.2d 914, 915 (Tenn. Ct. App. 1995)).

In Plaintiff's 2011 case, he alleged that, in or about May 2007, he began to receive negative evaluations and repeated harassment from Banks as a result of his participation in a 2005 EEOC investigation that involved another employee's complaint of sexual harassment.

(2011 Am. Compl. ¶¶ 16-18). Plaintiff alleged that he "could not give an answer to assist Management's point of view or the EEO Representative's request but did [in] fact speak on behalf of the fellow employee in question." (*Id*. ¶ 17). Plaintiff alleged that, subsequently, he began to receive negative evaluations and repeated harassment from Banks, which led him to file his own EEO charges, EEODFS-06-0847-F and EEODFS-07-1159-M. (*Id*. ¶ 18; *see also* Def.'s Exh. 1: EEO Charge EEODFS-06-0847-F; Def.'s Exh. 2: EEO Charge EEO-DFS-07-1159-M). He alleged that also was placed on an employment improvement plan, received "degrading humiliating training," and was the subject of "words that [were] unwarranted." (2011 Am. Compl. ¶ 24). Plaintiff alleged that, in or about August 2007, he requested reconsideration of a prior reasonable accommodation request from Banks and Yarbrough, which was denied. (*Id*. ¶ 21). Plaintiff alleged that he was "being harassed so much" that his health was negatively affected and that he left his employment under what he deemed a "constructive discharge." (*Id*. ¶¶ 21, 25). Plaintiff raised claims of discrimination on account of race, age, and disability under Title VII, ADEA, and the Rehabilitation Act. (*Id*. ¶¶ 26-40).

As to whether res judicata bars the instant claims with the exception of Plaintiff's claims that he was discriminated against on the basis of his disability (vision), this Court entered its Order Adopting Report and Recommendation, Denying Plaintiff's Motion for Summary Judgment, and Granting Defendant's Motion for Summary Judgment on February 26, 2015. This Court entered its Judgement on March 3, 2015. Plaintiff appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed the District Court's judgment on September 21, 2016. Additionally, Plaintiff Anthony T. Grose Sr. and Defendant, the Secretary of the Department of the Treasury, were the parties in both suits.

With respect to whether both suits involve the same cause of action, "the principal test for determining whether the causes of action are the same is whether the primary right and duty or wrong are the same in each case." *Gerber v. Holcomb*, 219 S.W.3d 914, 918 (Tenn. Ct. App. Dec. 27, 2006) (quoting *Hutcheson v. Tenn. Valley Auth.*, 604 F. Supp. 543, 550 (M.D. Tenn. 1985)). Plaintiff alleges in both suits that he was retaliated against for participating in EEO activity relating to another employee. (2011 Am. Compl. ¶¶ 16-18, 21, 24; Am. Compl. ¶¶ 15-24). Plaintiff further alleges in both suits that he was discriminated against on the basis of his race, gender, and age. (*See Anthony T. Grose, Sr. v. Jacob J. Lew*, No. 15-5357, at 1 (6th Cir. Sept. 21, 2016); Am. Compl. ¶¶ 5, 13). Thus, Plaintiff could have raised these claims in his prior suit. Finally, the previous suit was resolved by summary judgment, which is considered adjudication on the merits for purposes of res judicata. *Harrogate Corp. v. Systems Sales Corp.*, 915 S.W.2d 812, 816 (Tenn. Ct. App. Sept. 20, 1995) (citing *Galbreath v. Harris*, 811 S.W.2d 88, 91 (Tenn. 1990)) ("[T]he granting of summary judgment is deemed conclusive of all issues reached and decided by such summary judgment."). Accordingly, it is RECOMMENDED that Plaintiff's Title VII and ADEA claims be GRANTED under Rule 12(b)(6) as barred by the doctrine of res judicata.

### b. *Rule 56 of the Federal Rules of Civil Procedure*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th

Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Plaintiff alleges disability on the basis of vision in violation of both Sections 501 and 504 of the Rehabilitation Act and the ADA. As an initial matter, it is undisputed that Plaintiff was employed by the IRS. Under federal law, "[t]he Rehabilitation Act, not the [ADA], constitutes the exclusive remedy for a federal employee alleging disability-based discrimination." *Jones v. Potter*, 488 F. 3d 397, 403 (6th Cir. 2007) (*see* 42 U.S.C. § 12111(5)(B)(i) (defining employers covered by the ADA, but excluding the United States). Thus, it is RECOMMENDED that Plaintiff's ADA claim fails as a matter of law.

As to Plaintiff's Rehabilitation Act claims, absent direct evidence of discrimination, courts apply the three-step burden-shifting framework originally articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). The initial burden rests with the plaintiff to establish a prima facie case of discrimination. *Jones*, 488 F.3d at 404 (citing *Monette*, 90 F.3d at 1186). To establish a prima facie case under the Rehabilitation Act, a plaintiff must establish each of the following five elements: (1) that he is disabled; (2) that he is otherwise qualified for the job; (3) that he suffered an adverse employment action; (4) that his employer knew or had reason to know of his disability; and, (5) that, following the adverse employment action, either he was replaced by a nondisabled person or his position remained open. *Jones*, 488 F.3d at 404 (citing *Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004).

If the plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the challenged employment decision. *Jones*,

499 F.3d at 404 (citing *Burdine*, 450 U.S. at 353). Should the employer carry this burden, then the burden returns to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was in fact a pretext designed to mask illegal discrimination. *Id*. A plaintiff can defeat summary judgment only if his evidence is sufficient to "create a genuine dispute at each stage of the *McDonnell Douglas* inquiry." *Jones*, 499 F.3d at 404 (citing *Macy v. Hopkins Cty. Sch. Bd. of Educ.* 484 F.3d 357, 364 (6th Cir. 2007).

"Disability" is defined, with respect to an individual, as a "physical or mental impairment that substantially limits one or more of the major life activities of such individual," a "record of such impairment," or being "regarded as having such an impairment . . . ." 20 C.F.R. 1614.203; 20 C.F.R. § 1630.2(g). A substantial limitation must limit the "ability of the individual to perform a major life activity as compared to most people in the general population." 20 C.F.R. 1614.203; 20 C.F.R. § 1630.2(j). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. "The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted" and is "not meant to be a demanding standard," although "not every impairment will constitute a disability within the meaning of this section." *Id*. "Major life activities" include, but are not limited to, seeing, reading, communicating, interacting with others, and working. 20 C.F.R. 1614.203; 20 C.F.R § 1630.2(i)(1)(i).

With respect to whether a genuine issue of material fact exists as to whether Plaintiff is disabled under the Rehabilitation Act, the evidence shows that Dr. Norton, Dr. Allen, and Dr. Davis all opined that, although Plaintiff had diagnosed vision impairments, they would have

14

been corrected by the proper use of bifocal eyeglasses. Dr. Allen further found that Plaintiff's vision would be corrected to "normal 20/20 visual acuity when refracted at both near and far distances."

In considering vision impairments specifically, the United States Supreme Court concluded that "the number of people with vision impairments alone is 100 million," and "the finding that 43 million individuals are disabled gives content to . . . the term 'disability.'" *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 487 (1999). Thus, it reasoned that the term "disabled" is "restricted to those whose impairments are not mitigated by corrective measures." *Id*. The record reflects that Plaintiff's impairment can be corrected by bifocal eyeglasses but contains no evidence that Plaintiff obtained bifocal eyeglasses or utilized them in an attempt to correct his vision impairments. The record also contains evidence that Plaintiff could have benefitted from "computer glasses," computer software to enlarge the text and ergonomic improvements in his workplace. There is no evidence that Plaintiff requested or obtained any of these but instead continued to request two flat-screen monitors and a document magnification system with no justification as to why these would be more helpful for improving his vision. On the contrary, the record reflects that Dr. Allen found them to be explicitly "not necessary" because his vision could be corrected to normal 20/20 visual acuity with bifocal eyeglasses.

Accordingly, it is RECOMMENDED that Plaintiff fails to demonstrate that a genuine issue of material fact exists as to whether he is disabled under the Rehabilitation Act. Thus, it is RECOMMENDED that Plaintiff has failed to meet his prima facie burden, and that Plaintiff's Rehabilitation Act claims must fail as a matter of law.

## IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment be GRANTED in that Plaintiff's Title VII and ADEA claims be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff's ADA and Rehabilitation claims be dismissed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**DATED** this 27th day of February, 2018.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**